IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA, )
                   ) Case No. 2:23-cv-01580-JDP
         Plaintiff, )
                   ) **CONSENT DECREE**
                   **)**
                   )
         v. )
                   )
SINISTER MFG. COMPANY, INC., )
                   )
         Defendant. )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................. 2
II.     APPLICABILITY ................................................................................................... 3
III.    OBJECTIVES ......................................................................................................... 4
IV.     DEFINITIONS ........................................................................................................ 4
V.      CIVIL PENALTY .................................................................................................. 11
VI.     COMPLIANCE REQUIREMENTS ....................................................................... 14
VII.    REPORTING REQUIREMENTS .......................................................................... 20
VIII.   FAILURE TO COMPLY WITH CONSENT DECREE .......................................... 24
IX.     FORCE MAJEURE ............................................................................................... 28
X.      DISPUTE RESOLUTION ...................................................................................... 30
XI.     INFORMATION COLLECTION AND RETENTION ............................................ 32
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .................................. 34
XIII.   COSTS .................................................................................................................. 36
XIV.    NOTICES .............................................................................................................. 36
XV.     EFFECTIVE DATE ............................................................................................... 37
XVI.    RETENTION OF JURISDICTION ......................................................................... 38
XVII.   MODIFICATION ................................................................................................... 38
XVIII.  TERMINATION .................................................................................................... 38
XIX.    PUBLIC PARTICIPATION ................................................................................... 39
XX.     SIGNATORIES/SERVICE ..................................................................................... 39
XXI.    INTEGRATION ..................................................................................................... 40
XXII.   FINAL JUDGMENT .............................................................................................. 40
XXIII.  26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION...................................... 40
XXIV.   APPENDICES ....................................................................................................... 41

**WHEREAS**, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Sinister Mfg. Company, Inc. ("Sinister" or "Defendant"), violated Section 203(a)(3)(B) of the Clean Air Act ("Act"), 42 U.S.C. §7522(a)(3)(B).

**WHEREAS**, the Complaint against Defendant alleges that Defendant manufactured, offered for sale, sold, and/or installed at least 39,792 aftermarket automotive products, both hardware and software, designed to defeat emission controls between October 30, 2015, and July 17, 2017, in violation of Section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B). The Complaint alleges that Defendant manufactures, sells, and installs nationwide hardware and software that enable consumers to increase the power and performance of diesel trucks (hereinafter, "Aftermarket Performance Products").  The Complaint also alleges that in order to improve horsepower, torque, and other performance measures, many of these products defeat emission controls that help the vehicle meet emission standards for harmful pollutants, including oxides of nitrogen ("$NO_x$"), particulate matter ("PM"), carbon monoxide ("CO"), and non-methane hydrocarbons ("NMHCs").

**WHEREAS**, On March 9, 2020, Defendant provided a written, signed Stop Sale Commitment to the United States (the "Commitment") that it would, not later than April 30, 2020, stop the manufacture, sale, offering for sale, installation, and/or distribution of certain categories of products the United States alleges are illegal defeat devices, as set forth in the Commitment attached as Appendix A to this Consent Decree.  Defendant has provided quarterly certifications beginning on May 15, 2020, of its compliance with the Commitment.

**WHEREAS**, Defendant has asserted that it has a limited ability to pay a civil penalty and

1

has submitted Financial Information to the United States in support of that assertion.  The United States has reviewed this Financial Information to determine whether Defendant is financially able to pay a civil penalty for the violations alleged in the Complaint.  Based upon this Financial Information, the United States has determined that Defendant has limited financial ability to pay a civil penalty.

**WHEREAS**, by entering into this Consent Decree, Defendant makes no admission of law or fact with respect to the allegations in the Complaint and does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between  the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, with the consent of the Parties, **IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section(s) 42 U.S.C. §§ 7523 and 7524, and over the Parties.

2.      Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(c)(2), and 1395(a), as well as 42 U.S.C. § 7524, because it is the judicial district in which the Defendant is located, resides, is doing business, and/or in which a substantial part of the alleged violations in the Complaint occurred.

3.      For purposes of this Decree, or any action to enforce this Decree, Defendant and Guarantors consent to the Court's jurisdiction over this Decree and any such action and over Defendant and Guarantors and consent to venue in this judicial district.

4.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 203(a)(3)(B) of the Clean Air Act ("Act"), 42 U.S.C. § 7522(a)(3)(B).

## II.      APPLICABILITY

5.      The obligations of this Consent Decree apply to and are binding upon the United States, upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law, and upon Guarantors for purposes of the Guaranty.

6.      No transfer of ownership or operation of Defendant or any business unit thereof, including without limitation any subsidiary of Sinister or d/b/a or license to use a Sinister d/b/a, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented, unless (a) the transferee agrees to undertake the obligations required by this Decree with respect to the transferred business unit, (b) the United States consents to relieve Defendant of its obligations required by this Decree with respect to the transferred business unit, which consent shall not be unreasonably withheld, and (c) the Court approves the substitution or addition of the transferee with respect to such obligations required by this Decree.  The United States may refuse to approve the substitution of the transferee for Defendant if it determines in the reasonable exercise of its discretion that the proposed transferee does not have the financial or technical ability to comply with the requirements of the Decree.  Defendant may challenge the United States' refusal using the Dispute Resolution procedures set forth in Section X (Dispute

Resolution).  At least 30 Days prior to such transfer, Defendant shall provide a copy of this

Consent Decree to the proposed transferee and shall simultaneously provide written notice of the

prospective transfer to EPA and DOJ, in accordance with Section XIV (Notices).  Any attempt to

transfer ownership or operation of Defendant or any business unit thereof, including without

limitation any subsidiary of Sinister, a Sinister d/b/a, or a license to use a Sinister d/b/a, without

complying with this Paragraph constitutes a violation of this Decree.

7.      Defendant shall provide a copy of this Consent Decree to all officers, employees,

and agents whose duties might reasonably include compliance with any provision of this Decree,

as well as to any contractor retained to perform work required under this Consent Decree.

Defendant shall condition any such contract upon performance of the work in conformity with

the terms of this Consent Decree.

8.      In any action to enforce this Consent Decree, Defendant shall not raise as a

defense the failure by any of its officers, directors, employees, agents, or contractors to take any

actions necessary to comply with the provisions of this Consent Decree.

### III.      OBJECTIVES

9.      The objective for this Consent Decree is to resolve the Defendant's civil liability

for the violations of Title II of the Clean Air Act alleged in the Complaint through the date of

lodging and to ensure that the Defendant complies after the Effective Date with Title II of the

Clean Air Act, including Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B).

### IV.      DEFINITIONS

10.      Terms used in this Consent Decree that are defined in the Act or in regulations

promulgated pursuant to the Act have the meanings assigned to them in the Act or such

regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Act" means the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq.

"Authorized Dealer" means any third-party authorized by Defendant to sell products, including any wholesale distributor.

"Auxiliary Emission Control Device" or "AECD" shall mean any element of design of a Motor Vehicle or Motor Vehicle Engine that senses temperature, motive speed, engine revolutions per minute, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of a Motor Vehicle's emission control system.  See 40 C.F.R. § 1037.801.

"CARB Executive Order" or "CARB EO" means an official exemption issued by the California Air Resources Board ("CARB") exempting an aftermarket product from the prohibitions of Section 27156 of the California Vehicle Code upon review by CARB that the aftermarket product has been found not to reduce the effectiveness of the motor vehicle pollution control systems or to result in emissions from the modified or altered vehicle that are at levels that comply with existing state or federal standards for that model year of the vehicle being modified or converted.

"Certificate of Conformity" or "COC" means a document EPA issues to ensure that every new motor vehicle or motor vehicle engine introduced into United States commerce satisfies applicable emission standards.

"Commitment" shall mean the Stop Sale Commitment signed by Defendant on March 9, 2020 and submitted to the United States that is attached as Appendix A.

"Complaint" means the Complaint filed by the United States in this action.

"Complete Application" means an application for a CARB Executive Order that has been submitted to CARB and contains all forms and information, including the results of emissions testing or engineering evaluation, required for CARB to fully evaluate and take final action on the application.

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXIV).

"Covered Subject Product" means any Subject Product that is not an Excepted Subject Product.

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

"Defendant" means Sinister Mfg. Company, Inc. d/b/a. Sinister Diesel.

"Diesel Oxidation Catalyst System" or "DOC" means any oxidation catalyst used to reduce emissions from diesel-fueled vehicles and equipment, including all hardware, components, parts, sensors, subassemblies, software, AECDs, and calibrations that collectively constitute the system for implementing this strategy.

"Diesel Particulate Filter System" or "DPF" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emission-Related Elements of Design that collectively constitute the system for controlling emissions of particulate matter by trapping such particulates in a filter and periodically oxidizing them through thermal regeneration of the filter.

"DOJ" means the United States Department of Justice and any of its successor departments or agencies.

"Effective Date" means the definition provided in Section XV (Effective Date).

"Element of Design" is any control system (i.e., computer software, electronic control system, computer logic), and/or control system calibrations, and/or the results of systems interactions, and/or hardware items on a motor vehicle or motor vehicle engine, as defined in 40 C.F.R. § 86.1803-01.

"Emission-Related Calibrations" means software calibrations programed and installed by the Original Equipment Manufacturer ("OEM") in Motor Vehicles and/or Motor Vehicle Engines for parameters that can affect emissions, including but not limited to the following calibrations:

    i.  calibrations for parameters that affect the operation of the Exhaust Gas Recirculation System ("EGR") System, including EGR flowrate and EGR cooler bypassing;

    ii.  calibrations for parameters that affect the operation of the DPF, DOC, Selective Catalytic Reduction System ("SCR"), and/or NOx Adsorber Catalyst ("NAC");

    iii. calibrations for parameters that affect engine combustion, performance, and operation, including air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pulse width, fuel injection pressure, fuel injection mass, multiple injection patterns, open loop/closed loop functionality and control, ignition control – (spark timing), boost pressure, limiters (fuel, torque, smoke, etc.), manifold pressure, camshaft timing, electronic throttle control, engine air flow characteristics, mass air flow rate,

turbocharger/supercharger air flow, and other parameters disclosed on the COC which are elements of the OEM's strategy to control the formation of pollutants in the engine; and

       iv. calibrations for parameters that affect On-Board Diagnostics System ("OBD") detection, warning, and recording of malfunctions.

"Emission-Related Element of Design" means any part, device, or element of design installed on or in a motor vehicle or motor vehicle engine by an OEM for the specific purpose of controlling emissions or which must function properly to assure continued vehicle emission compliance, including but not limited to:

       i. On-Board Diagnostics System or OBD;

       ii. Diagnostic Trouble Codes or DTCs;

       iii. Oxygen sensors;

       iv. NOx sensors;

       v. Ammonia sensors;

       vi. Particulate Matter sensors or PM sensors;

       vii. Urea quality sensors;

       viii. Exhaust gas temperature sensors;

       ix. DPF differential pressure sensors;

       x. Exhaust Gas Recirculation System or EGR;

       xi. Diesel Oxidation Catalysts or DOCs;

       xii. Selective Catalytic Reduction System or SCR;

       xiii. Diesel Particulate Filter or DPF;

       xiv. NOx Adsorber Catalyst System or NAC;

       xv. Emission-Related Calibrations;

xvi. AECDs; and

xvii. Any other part, device, or element of design installed in compliance with Title II of the CAA and its regulations.  "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"Excepted Subject Product" is defined in Paragraph 15.

"Exhaust Gas Recirculation System" or "EGR" means all hardware, components, parts, sensors, subassemblies, software, AECDs, and calibrations that collectively constitute the system for controlling NOx emissions by recirculating a portion of engine exhaust gas into the cylinders of an engine.

"Financial Information" means the documentation and other information submitted by Defendant to the United States on June 11, 2021, July 27, 2021, and March 28, 2022.

"Guarantors" means Brian George and Michael Mitchell in their individual capacities.

"Guaranty" means the payment of any unpaid portion of the Civil Penalty, any stipulated penalties arising from late or non-payment of such unpaid portion of the Civil Penalty, and all interest accrued on such amounts in accordance with the terms of this Consent Decree, by the Guarantors in the event that Defendant defaults as to these payment obligations, as set forth in Paragraph 13.

"Marketing Materials" means all materials or communications containing or conveying information prepared or used by the Defendant to discuss, describe, or explain any of Defendant's products, in any form, including but not limited to electronic and hardcopy information used in advertisements, training materials, online videos (e.g., YouTube), social media webpages (e.g., Facebook, Instagram), and user manuals or guides.

9

"NOx Adsorber Catalyst System" or "NAC" means the strategy for controlling NOx emissions from partial lean burn gasoline engines and from diesel engines by adsorbing the NOx emissions onto a catalyst substrate during lean combustion followed by periodic regeneration of the substrate during short, richer-than stoichiometric combustion, together with all hardware, components, parts, sensors, subassemblies, software, AECDs, and calibrations that collectively constitute the system for implementing this control strategy.

"On-Board Diagnostics System" or "OBD" means the strategy for monitoring the functions and performance of the emission control system and all other systems and components that must be monitored under 40 C.F.R. § 86.1806-05 and 40 C.F.R. § 86.1806-17, for identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the malfunction indicator light ("MIL"), together with all hardware, components, parts, sensors, subassemblies, software, AECDs, and calibrations that collectively constitute the system for implementing this strategy.

"Original Equipment Manufacturer" or "OEM" means the manufacturer responsible for the design and production of a motor vehicle or motor vehicle engine.

"Paragraph" means a portion of this Decree identified by an Arabic numeral.

"Parties" means the United States and Defendant.

"Permanently Delete and/or Destroy" means (a) in the case of hardware, to crush the device and all of its parts or components to render them useless; and (b) in the case of software or firmware, to completely and permanently erase all programming and information.

"Section" means a portion of this Decree identified by a Roman numeral.

"Selective Catalytic Reduction System" or "SCR" means all hardware, components, parts, sensors, sub-assemblies, software, AECDs, calibrations, and other elements of design that

10

collectively constitute the system for controlling NOx emissions through catalytic reduction using an ammonia-based diesel exhaust fluid ("DEF") as the reducing agent, including without limitation all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Elements of Design relating to (1) the DEF storage tank, (2) the DEF injectors, (3) the dosing control unit, and (4) the SCR catalysts assembly.

"Subject Product" means any motor vehicle part, component or product manufactured, sold or offered for sale within the United States, a principal effect of which is to bypass, defeat, or render inoperative a motor vehicle emission control device or Emission-Related Element of Design, including, but not limited to, hardware, software, tunes, calibrations, or other programming (and devices on which such software, tunes, calibrations, or other programming are loaded). For the avoidance of doubt, Subject Products include, but are not limited to: software, tunes, calibrations, or other programming that enable an Emission-Related Element of Design to be removed, disabled, or bypassed, or otherwise affect one or more Emission-Related Elements of Design; and motor vehicle parts, components, or products that interfere with the function of, or allow removal of, one or more Emission-Related Elements of Design.

"United States" means the United States of America, acting on behalf of EPA.

V.     CIVIL PENALTY

11.     Defendant shall pay the sum of $500,000 as a civil penalty, together with interest accruing from the date of lodging of this Consent Decree, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, on the schedule set forth in this Paragraph.

>     a.     Not later than 30 days after the Effective Date, Defendant shall pay $200,000, plus an additional sum for interest on that amount calculated from the date of lodging;

11

      b.      Not later than one year after the Effective Date, Defendant shall pay $150,000, plus an additional sum for interest on that amount calculated from the date of lodging;

      c.      Not later than two years after the Effective Date, Defendant shall pay $150,000, plus an additional sum for interest on that amount calculated from the date of lodging.

12.      Defendant shall pay the civil penalty due by FedWire to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of California after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Justin Savage
> Sidley Austin LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> jsavage@sidley.com
>
> Nicole Noelliste
> Sidley Austin LLP
> 1501 K Street, N.W.
> Washington, D.C. 20005
> nnoelliste@sidley.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XIV (Notices); and (iii) to EPA in accordance with Section XIV (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Sinister Mfg. Company, Inc.* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-12092.

13.    <u>Guaranty</u>.  The Guarantors hereby guarantee payment of all payment and/or penalty obligations in Paragraph 11 (Civil Penalty), Paragraph 37 (Stipulated Penalties) (but only to the extent a stipulated penalty arises from the late or non-payment of any portion of the Civil Penalty), and Paragraph 41 (Interest on Civil Penalty Payments) on behalf of Defendant. This is a continuing Guaranty as to which each Guarantor is jointly and severally liable and shall remain in full force and effect until all payments under such paragraphs have been fully paid. Guarantors, by their signatures below, each agree to jurisdiction of this Court for the purposes of enforcing the Guaranty pursuant to this Consent Decree.  In the event Defendant defaults on any payment and/or penalty obligations under Paragraph 11 (Civil Penalty), Paragraph 37 (Stipulated Penalties) (but only to the extent a stipulated penalty arises from the late or non-payment of any portion of the Civil Penalty), and Paragraph 41 (Interest on Civil Penalty Payments), the United States shall be entitled to immediately pursue its rights to enforce this Guaranty in any appropriate legal forum and Guarantors and Defendant agree not to challenge the United States' enforcement of this Guaranty.

14.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Failure to Comply With Consent Decree) in calculating its federal income tax.

## VI.     COMPLIANCE REQUIREMENTS

15.     <u>Excepted Subject Products</u>.  A product that would otherwise be a Subject Product is an Excepted Subject Product if one or more of the following is true:

a.     Defendant has obtained a CARB EO for the product prior to manufacture, sale, offering for sale, or installation within the United States; provided that CARB has not cancelled, withdrawn, or otherwise rendered ineffective such CARB EO.

b.     Defendant has submitted a Complete Application to CARB that covers the product prior to manufacture, sale, offering for sale, or installation, provided, however, that:

(1)     If CARB denies or Defendant withdraws any Complete Application for a CARB EO submitted under this Paragraph, the product shall not be an Excepted Subject Product.  Defendant shall immediately cease manufacturing and selling that product, shall notify all Authorized Dealers that continued sales of the product may constitute violations of the Act, and shall take other reasonable efforts to remove that product from commerce.  For the purposes of this sub-paragraph, denial shall mean a letter from CARB conveying notice of denial; and

14

(2)    A product shall not be an Excepted Subject Product if the application is still pending two or more years after submittal or CARB has not acted on the application because Defendant failed to provide information.  EPA may, in its unreviewable discretion, extend the deadline under this sub-Paragraph upon written request of the Defendant;

c.    The manufacturer, if not Defendant, has obtained a CARB EO for the product prior to manufacture for other than prototype use, sale, offering for sale, or installation for other than prototype use, which Defendant has verified by locating the relevant CARB EO on CARB's Executive Orders, Certifications, & Verifications website, located at https://ww2.arb.ca.gov/executive-orders-certifications-verifications; or

d.    The manufacturer, if not Defendant, prior to manufacture, sale, offering for sale, or installation, provides Defendant with either 1) evidence establishing that the manufacturer has performed independent emission testing, pursuant to a Consent Decree or administrative settlement with EPA, of the product that demonstrates that the product does not adversely affect emissions, including copies of the testing plan and laboratory results and analysis; 2) a Consent Decree or administrative settlement that prohibits the product from containing any user-adjustable features for any emissions control device or Emissions-Related Element of Design accompanied by a written certification from the manufacturer as set forth in Paragraph 33 herein that the manufacturer is in compliance with this requirement; provided, however, that upon termination of such Consent Decree or administrative settlement, or upon notification by EPA of noncompliance with such Consent Decree or administrative settlement,

15

the product shall no longer be an Excepted Subject Product.

16.     <u>Prohibition on manufacture, sale, offer for sale, and installation of Covered Subject Products</u>.  After the Effective Date, Defendant shall not manufacture, sell, offer to sell, or install any Covered Subject Product in the United States.

17.     <u>Destruction of Covered Subject Products</u>.  No later than 30 days after the Effective Date, Defendant shall Permanently Delete and/or Destroy all Covered Subject Products in its possession or control, including those Covered Subject Products forfeited by employees and officers of Defendant pursuant to Paragraph 26.  Notwithstanding the foregoing, this Paragraph does not apply to products that are present outside the United States on the Effective Date.

18.     <u>Prohibition on Tampering</u>.  After the Effective Date, Defendant shall not remove or render inoperative any device or Emission-Related Element of Design that has been installed on or in a motor vehicle or motor vehicle engine in compliance with the CAA; provided that this Paragraph shall not apply to Excepted Subject Products.

19.     <u>Prohibition on Technical Support and Warranty for all Covered Subject Products</u>. After the Effective Date, Defendant shall not offer or make available any Technical Support or other information (including Marketing Materials) pertaining to the installation, manufacture, sale, use, or repair of any Covered Subject Product and shall deny all warranty claims pertaining to any Covered Subject Product.

20.     <u>Revision of Marketing Materials</u>.  Defendant shall revise all Marketing Materials as necessary to ensure that, not later than 30 days after the Effective Date, such materials do not include any information, including but not limited to instructions or demonstrations, that pertains

or relates in any way to replacing, overwriting, deleting, bypassing, defeating, or otherwise rendering inoperative any emission control device or Emission-Related Element of Design.

21.     <u>Instructions to Authorized Dealers</u>.  No later than 30 Days after the Effective Date, Defendant shall (a) notify all Authorized Dealers that Defendant is no longer honoring warranty claims pertaining to any Covered Subject Product and that Defendant is no longer supplying Technical Support pertaining to the installation, manufacture, sale, use, or repair of any Covered Subject Product; and (b) instruct all Authorized Dealers to refuse to honor any warranty claims pertaining to any Covered Subject Product and to refuse to supply any Technical Support or other information (including Marketing Materials) pertaining to the installation, manufacture, sale, use, or repair of any Covered Subject Product.

22.     Notwithstanding the requirements of Paragraphs 19 and 21, Defendant and any Authorized Dealers may assist customers in removing any Covered Subject Products from vehicles on which they were installed and returning such vehicles to the OEM settings. Defendant and any Authorized Dealers may provide Technical Support to customers that does not involve the installation, manufacture, sale, use, or repair of Covered Subject Products.

23.     <u>Notice to Authorized Dealers and Covered Subject Product Customers</u>.  No later than 30 Days after the Effective Date, Defendant shall transmit a notice that includes the language specified in Appendix B to (a) each Authorized Dealer and (b) each end-use customer whose contact information Sinister possesses to which a Covered Subject Product was sold on or after October 30, 2015.

24.     <u>Notice to Employees</u>.  No later than 30 Days after the Effective Date, Defendant shall post a written notice of applicable Clean Air Act prohibitions, incorporating language contained in Appendix C to this Decree, in conspicuous locations, both physical and electronic,

where Defendant's officers and employees will regularly encounter it.  These postings must include both hardcopy postings in a physical location and on-line, electronic postings.

25.     <u>Training of Employees</u>.  No later than 30 Days after the Effective Date, and continuing on an annual basis thereafter, Defendant shall conduct a Clean Air Act Compliance Training Program for all officers, employees, contractors, and consultants (hereinafter, "trainees").  Defendant shall be permitted to retain external contractors or consultants to assist with or to conduct the Training Program.  The Training Program shall:

a.        Include detailed information regarding:

(1)     The Compliance Requirements set forth in Section VI of this Consent Decree;

(2)     The acts prohibited by Section 203(a)(3) of the Act, 42 U.S.C. § 7522(a)(3), including the statutory language of Section 203(a)(3);

(3)     The categories of potentially liable persons under the Act, including individuals;

(4)     The relevant maximum civil penalties for each violation of Section 203(a)(3)(A) and 203(a)(3)(B), as adjusted for inflation in 40 C.F.R. Part 19; and

(5)     The acts prohibited by Section 113(c)(2) of the Act, 42 U.S.C. § 7413(c)(2), including the statutory language of that Section and the criminal penalties set forth therein;

b.        Consist of at least two hours of in-person training; provided, however, that

18

in the event of a public health emergency, Defendant may conduct training via video- or audio-enabled teleconference, webinar, or similar live-session method;

      c.        Provide the trainees with a written summary of all training content, including the information required in Paragraph 25.a; and

      d.        Require all trainees to acknowledge, in writing, that they participated in the training session and received a written summary of all content as required by Paragraph 25.c.

      26.    <u>Requirement of Employees to Forfeit Covered Subject Products</u>.  No later than 30 Days after the Effective Date, Defendant shall require each officer and employee of the Defendant to forfeit any Covered Subject Product in his or her possession, or installed on any motor vehicle owned or operated by him or her or under his or her control, by returning such Covered Subject Product to an individual designated by Defendant and identified to EPA for such purpose.

      27.    <u>Prohibition on Transfer of Intellectual Property</u>.  After the Effective Date, Defendant shall not offer for sale, sell, convey, or otherwise transfer in any way the design, source code, technology, manufacturing process, or other intellectual property associated with any Covered Subject Product, except as part of a submission to CARB, in response to a request from the United States, or as otherwise required by law.

      28.    <u>Certification of Compliance With Commitment</u>.  By signing this Decree, Defendant certifies under penalty of law that it has not manufactured, sold, offered for sale, installed, or distributed any of the products listed in Paragraph 1 of the Commitment since the date of the last certification it submitted pursuant to that Commitment, which completes the obligation to complete certifications under the Commitment.

29.     <u>Decree Not a Compliance Determination</u>.  Defendant shall not state or imply in any way that, as a result of this Consent Decree, any product is covered by a compliance determination (or similar designation) from EPA.

30.     <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VII.    REPORTING REQUIREMENTS

31.     By January 31st of the calendar year after the Effective Date, and continuing on an annual basis until termination of this Decree pursuant to Section XVIII (Termination), Defendant shall submit to EPA and DOJ at the e-mail addresses set forth in Section XIV (Notices) an annual progress report for the preceding twelve months (except that the first annual progress report shall also, for the requirements of Paragraph 31.c, cover the period from April 30, 2020 to the end of the period covered by such report).  The annual progress report shall include, but is not limited to, the following: A statement regarding the status of the payment of (i) the civil penalties and associated Interest pursuant to Paragraph 11 and (ii) any stipulated penalties owing pursuant to Section VIII (Failure to Comply With Consent Decree);

a.      As to Covered Subject Products that were deleted or destroyed during the Reporting Period pursuant to Paragraph 17 (Destruction of Covered Subject Products), a list of

all hardware products, including product names, type, serial numbers, and date of destruction;

b.	A list of all software, data, or other information that was destroyed or deleted, including the type of software, data, or other information and the date of destruction or deletion;

c.	A complete copy of Defendant's purchase and sale records for the Reporting Period covering all parts or components intended for use with, or as part of, any motor vehicle or motor vehicle engine.  Unless EPA agrees otherwise, this shall be in the form of an electronic data export from an electronic database.  For each part or component included in the purchase and sale records, Defendant shall identify the part or component as:

(1)	An engine tuner

(2)	An engine tune

(3)	A hardware product

(4)	A Covered Subject Product, an Excepted Subject Product (including the basis for this designation, with specific reference to the relevant subparagraph and subparagraph part of Paragraph 15, and CARB EO number, Complete Application designation, or Consent Decree or administrative settlement), or neither;

d.	A list of all CARB Executive Orders for which Sinister has submitted during the Reporting Period, or plans to submit within the next Reporting Period, a Complete Application, or that Sinister has received since the Effective Date.  Such list shall also include any CARB Executive Order that has been issued for a product manufactured by someone other

21

than Defendant but which Defendant sold, offered for sale, or installed during the Reporting Period;

e.        A list of all Consent Decrees or administrative settlement agreements that, under Paragraph 15.d, render a Subject Product an Excepted Subject Product, along with a copy of each such Consent Decree or administrative settlement and the required documentation of independent emission testing pursuant to Paragraph 15.d(1) or certification of compliance by the manufacturer pursuant to Paragraph 15.d(2), as applicable.  Such list shall include the case title, docket number, and district (if judicial) of the Consent Decree or administrative settlement and shall identify the corresponding part by name, product type, and SKU;

f.        A list of all Authorized Dealers to whom Defendant provided instructions pursuant to Paragraph 21 during the Reporting Period and a copy of any such instructions provided;

g.        A list of all Authorized Dealers and end-use customers to whom Defendant provided a notification pursuant to Paragraph 23 during the Reporting Period and a copy of any such notification provided;

h.        A copy of the written notice required to be posted pursuant to Paragraph 24 and a description of the manner of posting (or continued posting if posted in a prior Reporting Period) during the Reporting Period;

i.        A list of all officers, employees, contractors and consultants who participated in the Clean Air Act Compliance Training Program during the Reporting Period, pursuant to Paragraph 25 and copies of the training acknowledgments signed by the participants; provided, however, that if the California Consumer Privacy Act of 2018, Cal. Civ. Code 1.81.5, is amended such that the inclusion of personal information of Defendant's

22

employees and/or contractors in an Annual Report under this Paragraph is prohibited, Sinister and EPA shall consult to determine and agree on an appropriate modification of this Paragraph, which shall be deemed a non-material modification of the Consent Decree; and

j.           A list of all products that, during the Reporting Period, were forfeited in accordance with Paragraph 26, the name of the individual to whom the products were delivered for forfeiture, and documentation of the destruction or deletion of such products as set forth in Paragraph 17;

k.           A description of any non-compliance with the requirements of this Consent Decree during the Reporting Period and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX (Force Majeure).

32.       Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA by telephone at (415) 972-3308 or by email to chan.janice@epa.gov as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

23

33.     Each report submitted by Defendant under this Section shall be signed by an

official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

34.     This certification requirement does not apply to emergency or similar

notifications where compliance would be impractical.

35.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by the Act or implementing regulations, or by any other

federal, state, or local law, regulation, permit, or other requirement.

36.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VIII.   FAILURE TO COMPLY WITH CONSENT DECREE

37.     Defendant shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified in the table below, unless excused under

Section IX (Force Majeure).  A violation includes failing to perform any obligation required by

the terms of this Decree, including any work plan or schedule approved under this Decree,

according to all applicable requirements of this Decree and within the specified time schedules

established by or approved under this Decree.

| Consent Decree Violation | Stipulated Penalty |
|---|---|
| Failure to pay any amount of the civil penalty required to be paid under Section V (Civil Penalty) when due | $1,000 per Day for the first 30 Days of noncompliance, $2,000 per Day thereafter. |
| Manufacture, sale, offer for sale, or installation of any Covered Subject Product in violation of the requirements of Paragraph 16 (Prohibition on Manufacture, Sale, Offer for Sale, and Installation of Covered Subject Products) | For the first 100 Covered Subject Products, $2,500 per Covered Subject Product manufactured, sold, offered for sale or installed.  For each Covered Subject Product thereafter, $4,500 per Covered Subject Product manufactured, sold, or installed. |
| Failure to comply with the requirements of Paragraph 17 (Destruction of Covered Subject Products) | $2,000 per Day for the first 30 Days of noncompliance; $4,000 per Day thereafter. |
| Providing technical support or honoring warranty claim in violation of Paragraph 19 (Prohibition on Technical Support and Warranty for all Covered Subject Products) | $2,500 per instance in which technical support is provided or a warranty is honored. |
| Failure to revise Marketing Materials in violation of Paragraph 20 (Revision of Marketing Materials) | $1,000 for each instance of a noncompliant Marketing Material per Day for the first 30 Days of noncompliance; $2,000 for each such instance per Day thereafter. |
| Failure to provide notice as required by Paragraph  21 (Instructions to Authorized Dealers) | $500 per Day for the first 30 Days of noncompliance; $1,500 per Day thereafter. |
| Failure to notify Authorized Dealers and customers as required by Paragraph 23 (Notice to Authorized Dealers and Covered Subject Product Customers) | $2500 per Day for each Day of noncompliance. |
| Failure to comply with the requirements of Paragraph 24 (Notice to Employees) | $500 per Day for the first 30 Days of noncompliance; $2,500 per Day thereafter. |
| Failure to comply with the requirements of Paragraph 25 (Training of Employees) | $750 per trainee. |
| Failure to comply with the requirements of Paragraph 26 (Requirement of Employees to Forfeit Covered Subject Products) | $500 per Day for the first 30 Days of noncompliance; $2,500 per Day thereafter. |
| Transfer of Intellectual Property in violation of Paragraph 27 (Prohibition on transfer of Intellectual Property) | $500,000 or two times the gross amount received from the transfer, whichever is greater. |
| Failure to submit an Annual Report, or failure to submit a complete and accurate Annual Report, in violation of Section VII (Reporting Requirements) | $500 per day for the first 15 Days of noncompliance for each violation of the reporting requirements, $1,500 for the 16th through 30th Days of noncompliance |

| | for each violation of the reporting requirements, and $3,000 per Day thereafter for each violation of the reporting requirements. |
|---|---|

38.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

39.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

40.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

41.     <u>Interest on Civil Penalty Payments</u>.  In addition to the Stipulated Penalty set forth in Paragraph 38, if Defendant fails to make any payment required by Paragraph 11 (Civil Penalty) by the required due date, all remaining installment payments and all accrued interest shall become due immediately upon such failure. Interest shall continue to accrue on any unpaid amounts until the total amount due has been received.

42.     Stipulated penalties shall continue to accrue as provided in Paragraph 38 during any Dispute Resolution, but need not be paid until the following:

a.         If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.         If the dispute is appealed to the Court and the United States prevails in

whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c., below.

        c.        If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

        43.    <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to violations of Paragraph 16 (Prohibition on the Manufacture, Sale, Offer for Sale, and Installation of Covered Subject Products) that have occurred after April 30, 2020 but prior to the Effective Date as a result of Defendant's noncompliance with the Commitment, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

        44.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 12 and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

        45.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

46.     The payment of penalties and interest, if any, shall not alter in any way

Defendant's obligation to complete the performance of the requirements of this Consent Decree.

47.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States'

exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII

(Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to

seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable

law, including but not limited to an action against Defendant for statutory penalties, additional

injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any

statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount

equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.     FORCE MAJEURE

48.     "Force majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

Defendant's contractors, which delays or prevents the performance of any obligation under this

Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that

Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

any potential force majeure event and best efforts to address the effects of any potential force

majeure event (a) as it is occurring and (b) following the potential force majeure, such that the

delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

Defendant's financial inability to perform any obligation under this Consent Decree.

49.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

shall provide notice by electronic transmission to Janice Chan at <u>chan.janice@epa.gov</u> within 72

hours of when Defendant first knew that the event might cause a delay.  Within ten Days

thereafter, Defendant shall provide in writing to EPA an explanation and description of the

reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

prevent or minimize the delay; a schedule for implementation of any measures to be taken to

prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such

delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

in the opinion of Defendant, such event may cause or contribute to an endangerment to public

health, welfare, or the environment.  Defendant shall include with any notice all available

documentation supporting the claim that the delay was attributable to a force majeure.  Failure to

comply with the above requirements shall preclude Defendant from asserting any claim of force

majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which

Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have

known.

50.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure

event, the time for performance of the obligations under this Consent Decree that are affected by

the force majeure event will be extended by EPA for such time as is necessary to complete those

obligations.  An extension of the time for performance of the obligations affected by the force

majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

will notify Defendant in writing of the length of the extension, if any, for performance of the

obligations affected by the force majeure event.

51.     If EPA does not agree that the delay or anticipated delay has been or will be

caused by a force majeure event, EPA will notify Defendant in writing of its decision.

52.     If Defendant elects to invoke the dispute resolution procedures set forth in

Section X (Dispute Resolution), it shall do so no later than 20 Days after receipt of EPA's notice.

In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of

the evidence that the delay or anticipated delay has been or will be caused by a force majeure

event, that the duration of the delay or the extension sought was or will be warranted under the

circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Defendant complied with the requirements of Paragraphs 48 and 49.  If Defendant carries

this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected

obligation of this Consent Decree identified to EPA and the Court.

X.     DISPUTE RESOLUTION

53.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute

under this Section shall preclude Defendant from raising any such issue as a defense to an action

by the United States to enforce any obligation of Defendant arising under this Decree.

54.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.

Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal

negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is

modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations,

then the position advanced by the United States shall be considered binding unless, within 30

Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

55.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

56.     The United States shall send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

59.     Standard of Review.  In any dispute brought under this Decree, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree, and better furthers the Objectives of the Consent Decree.

60.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 42.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Failure to Comply With Consent Decree).

## XI.     INFORMATION COLLECTION AND RETENTION

61.     Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Defendant executes this Consent Decree.

62.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility owned or operated by Defendant, at all reasonable times, upon presentation of credentials, to:

a.              monitor the progress of activities required under this Consent Decree;

32

b.        verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.        obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.        obtain documentary evidence, including photographs and similar data; and

e.        assess Defendant's compliance with this Consent Decree.

63.        Until four years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

64.        At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:

33

(a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

65.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

66.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

67.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

68.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief in addition to that provided in this Consent Decree, if the Financial Information provided by Defendant, or the certification made by Defendant in Paragraph 61, is false or, in any material respect, inaccurate.

34

69.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 67.

70.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Defendant's alleged violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 67.

71.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

72.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties not party to this Consent Decree, nor does it limit the

rights of third parties not party to this Consent Decree against Defendant, except as otherwise provided by law.

73.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

74.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV.   NOTICES

75.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email (with a preference for email), addressed as follows:

| | |
|---|---|
| As to DOJ by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-12092 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-12092 |
| As to EPA by email: | Chan.Janice@epa.gov |
| As to EPA by mail: | Enforcement and Compliance Assurance Division<br>(Mail Code ENF-2-1)<br>U.S. Environmental Protection Agency, Region IX<br>75 Hawthorne Street<br>San Francisco, CA 94105 |

As to Defendant:                    Justin Savage
                                    Sidley Austin LLP
                                    1501 K Street, N.W.
                                    Washington, D.C. 20005
                                    jsavage@sidley.com

                                    Nicole Noelliste
                                    Sidley Austin LLP
                                    1501 K Street, N.W.
                                    Washington, D.C. 20005
                                    nnoelliste@sidley.com

76.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

77.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.   EFFECTIVE DATE

78.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date as set forth in the Commitment.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date as set forth in the Commitment shall terminate.

## XVI.   RETENTION OF JURISDICTION

79.     The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or

effectuating or enforcing compliance with the terms of this Decree.

## XVII.   MODIFICATION

80.     The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by all the Parties.  Where the

modification constitutes a material change to this Decree, it shall be effective only upon approval

by the Court.

81.     Any disputes concerning modification of this Decree shall be resolved pursuant to

Section X (Dispute Resolution); provided, however, that, instead of the burden of proof provided

by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is

entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

82.     After Defendant has completed the requirements of Section VI (Compliance

Requirements), has thereafter maintained continuous satisfactory compliance with this Consent

Decree for a period of four (4) years, and has paid the civil penalty and any accrued stipulated

penalties as required by this Consent Decree, Defendant may serve upon the United States a

Request for Termination, stating that Defendant has satisfied those requirements, together with

all necessary supporting documentation.

83.     Following receipt by the United States of Defendant's Request for Termination,

the Parties shall confer informally concerning the Request and any disagreement that the Parties

may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

84.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X (Dispute Resolution).  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

85.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX.    SIGNATORIES/SERVICE

86.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of DOJ certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

39

87.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.   INTEGRATION

88.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## XXII.  FINAL JUDGMENT

89.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

90.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 7; Section VI (Compliance Requirements), Paragraphs 15 - 21 and 23 - 28; Section VII (Reporting Requirements), Paragraphs 31 - 33; Section VIII (Failure to Comply With Consent Decree), Paragraph 43; and Section XI (Information Collection and Retention), Paragraphs 61 - 64, is restitution or required to come into compliance with law.

## XXIV. APPENDICES

91.     The following Appendices are attached to and part of this Consent Decree:

a.          "Appendix A" is the Commitment;

b.          "Appendix B" is the required language for the Notice to Authorized

Dealers and Covered Subject Product Customers for purposes of Paragraph 23; and

c.          "Appendix C" is the required language for the Notice to Employees for

purposes of Paragraph 24.


Dated: October 05, 2023              /s/ John A. Mendez
                                     _____
                                     THE HONORABLE JOHN A. MENDEZ
                                     SENIOR UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

TODD S. KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611

Date: _____          _____
                             Eric D. Albert, Senior Attorney
                             Joanna Day, Senior Counsel
                             Environmental Enforcement Section
                             Environment and Natural Resources Division
                             U.S. Department of Justice
                             Washington, DC  20044-7611
                             202-514-2800 (direct)
                             Eric.albert@usdoj.gov
                             Joanna.day@usdoj.gov

42

Consent Decree in *United States v. Sinister Mfg Company, Inc.*

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


_____
Sylvia Quast
Regional Counsel
U.S. Environmental Protection Agency, Region 9


_____
David H. Kim
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 9
Office of Regional Counsel

Consent Decree in *United States v. Sinister Mfg Company, Inc.*

FOR SINISTER MFG. COMPANY, INC.:


_____                    _____
Date                           Brian George
                               Chief Executive Officer
                               Sinister Mfg. Company, Inc.

Consent Decree in *United States v. Sinister Mfg Company, Inc.*

FOR GUARANTORS:


_____
Date

_____
Michael Mitchell
In his individual capacity


_____
Date

_____
Brian George
In his individual capacity

Consent Decree in *United States v. Sinister Mfg Company, Inc.*